UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILLIAM E. FRANKE, | ) |  |
|---|---|---|
| Plaintiff(s), | ) | |
| vs. | ) | Case No. 4:11CV1860 JCH |
| ROBERT P. GREENE, | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Robert P. Greene's Motion to Dismiss Amended Complaint for Lack of Jurisdiction ("Motion to Dismiss"), filed January 17, 2012. (ECF No. 15). The matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff William E. Franke ("Franke") is a resident of Virginia. (First Amended Complaint ("Complaint" or "Compl."), ¶ 2). Defendant Robert P. Greene ("Greene") is a resident of Missouri. (Id., ¶ 3). Franke is the founder, President, Chief Executive Officer, and owner of Gannon International, a Missouri corporation with a family of affiliated corporations, partnerships, and joint ventures around the world. (Id., ¶ 6). Greene was an employee of Gannon International at its principal place of business in St. Louis County. (Id. ¶ 7).

Sometime prior to May, 2007, Greene approached Franke with a request for a loan in the amount of $750,000. (Compl., ¶ 9). The stated purpose of the loan was to "bridge the gap on building [Greene's] house from now until the final financing this summer." (Id., quoting attached

---

[1] The majority of the Court's background section is taken from Plaintiff's Complaint, to which Defendant has not yet filed an answer.

Exh. B). Greene told Franke that he would pay back the loan using proceeds from the refinancing of his new personal residence, which was under construction at the time. (Id.). Greene further assured Franke that, "[i]n the event the final loan amount falls short of my target I will sell personal investments to cover any short fall." (Id.).

On or about May 4, 2007, Greene executed and delivered a promissory note in the original principal amount of $750,000, in favor of Franke (the "Promissory Note"). (Compl., ¶ 8, citing attached Exh. A). Pursuant to the Promissory Note, Franke extended credit in the amount of $750,000 to Greene. (Id. ¶ 10). Over time, the amount owed under the Promissory Note was partially paid down. (Id.). Subsequently, however, additional funds were extended by Franke to Greene under the Promissory Note. (Id.).[2] The Promissory Note thus was a revolving note, which covered all monies borrowed from Franke by Greene, as Greene attempted to satisfy his financial obligations. (Id.).

Greene resigned from his position with Gannon International on March 2, 2010. (Compl., ¶ 7). On or about May 18, 2011 Greene, along with Walter A. Blocker[3], filed suit in Missouri state court against Gannon International Ltd., The Gannon Pacific Company, The Gannon Company (Hong Kong) Limited, Gannon Vietnam Co., Ltd., and Franke. (ECF No. 16-2). On or about October 4, 2011, Greene filed nineteen other suits against Franke and various individuals and corporate entities in Missouri state court.[4]

---

[2] In January, 2009, Franke informed Greene that he would not agree to loan additional funds to Greene under the Promissory Note. (Compl., ¶ 15).

[3] Walter A. Blocker was a former employee of a wholly owned subsidiary of Gannon International, and is not a party to this federal suit. (ECF No. 16-2, P. 3).

[4] The parties also are involved in a lawsuit in Vietnam, where they jointly own a beverage factory. (Motion to Dismiss, P. 1).

Franke filed his original Complaint in this matter on October 26, 2011. (ECF No. 1). In his First Amended Complaint, Franke seeks payment on the amount allegedly still owed under the Promissory Note.[5]

As stated above, Greene filed the instant Motion to Dismiss on January 17, 2012. (ECF No. 15). Greene seeks dismissal pursuant to Fed.R.Civ.P. Rule 12(b), asserting that this Court lacks jurisdiction to hear this case. Specifically, Greene asserts Franke's Complaint is a compulsory counterclaim to the nineteen lawsuits filed in Missouri state court, and therefore must be dismissed pursuant to Rule 12(b)(1).

**A.  LEGAL STANDARD FOR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either a "facial" or "factual" attack. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted) ("In order to properly dismiss [an action] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments."). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (citation omitted). Factual attacks conversely challenge subject matter jurisdiction irrespective of the allegations in the complaint. Under a factual challenge, the district court is afforded the unique power to make factual findings which are decisive of its jurisdiction. Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1140 (8th Cir. 1998), cert. denied, 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999); Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). Consequently, the Court is not limited to an inquiry into undisputed facts, but

---

[5] According to Franke, as of July 18, 2011, the amount owed under the Promissory Note, including principal and interest, was $531,524.66. (Compl., ¶ 17).

- 3 -

may entertain conflicting evidence and decide for itself the factual issues which determine jurisdiction. See Osborn, 918 F.2d at 730; Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Under a factual attack, the plaintiff bears the burden of proving that subject matter jurisdiction does in fact exist. Osborn, 918 F.2d at 730.

In his reply memorandum, Greene acknowledges that his Motion to Dismiss contains a factual attack. (Defendant's Reply Memorandum in Support of his Motion to Dismiss for Lack of Jurisdiction ("Reply"), P. 1). This Court thus is free to make the factual findings necessary to determine its jurisdiction. Godfrey, 161 F.3d at 1140.

### B. DISCUSSION

Missouri Supreme Court Rule 55.32(a) governs compulsory counterclaims. Hemme v. Bharti, 183 S.W. 3d 593, 596 (Mo. 2006). "The purpose of the compulsory counterclaim rule is to promote judicial economy by requiring all logically related claims to be brought in a single proceeding." Id. at 598 (citations omitted). In Missouri, a claim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Id. at 596 (quoting Rule 55.32(a)). Missouri Supreme Court Rule 55.32 is substantively equivalent to Federal Rule of Civil Procedure 13(a), and "functions as a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." Bankcard Systems, Inc. v. Miller/Overfelt, Inc., 219 F.3d 770, 773 (8th Cir. 2000) (internal quotations and citations omitted).

> Under Rule 55.32(a), the subject of an opposing party's claim consists of the physical facts, things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted, and the term "transaction" is to be applied in its broadest sense, to include all facts and circumstances constituting the foundation of the claim. When the facts which would support

> a defense to the original claim would also support a counterclaim, the two
> arise from the same transaction.

Id. (internal citations omitted).

In his Motion to Dismiss, Greene contends Franke's suit on the Promissory Note must be dismissed, as it is a compulsory counterclaim to the state court suits. In support of this assertion, Greene recounts the following alleged history: Greene and Franke are longtime business associates, engaged in profit-sharing and/or the co-ownership, directly or indirectly, of many business organizations. (Motion to Dismiss, P. 2). One of those business organizations, Gannon International, Ltd., has a wholly owned subsidiary, Gannon Development Company, engaged in the business of constructing and selling structures on real property. (Id., PP. 2-3). Greene elected to utilize the services of Gannon Development to erect his new residence. (Id., P. 3). According to Greene, with the consent of Franke and Gannon Development's other Board members, he delayed payment of the profits associated with the construction of his home to Gannon Development. (Id.). Greene maintains Franke and the other Board members agreed to carry the balance on Gannon Development's books because Greene was owed a substantial sum of money, as a result of his election not to take certain annual distributions from the various Gannon entities for a period of several years. (Id.).

According to Greene, upon completion of Greene's residence Franke changed his mind about the arrangement, instead insisting that Greene "pay off" his obligation because carrying the debt on Gannon Development's books "looked bad." (Motion to Dismiss, PP. 3-4). Greene alleges Franke's change of heart resulted in his executing the Promissory Note, in the amount that he owed to Gannon Development. (Id.). Greene thus maintains the loan at issue was not a personal loan, but rather a loan directly related to Gannon Development.

As noted above, in May and October, 2011, Greene filed a total of twenty lawsuits against Franke in Missouri state court. Through the Missouri lawsuits Greene seeks an equitable accounting from numerous Gannon business entities, together with damages for missing funds to which he claims entitlement. (Motion to Dismiss, P. 2). With the instant motion, Greene asserts Franke's suit on the Promissory Note, related as it is to a Gannon entity, must be presented as a compulsory counterclaim to the pending Missouri suits, in order to permit a "global reconciliation" of the debts between the parties.

Upon review of the record the Court finds Greene offers no evidence, other than his own affidavit, to support his contention that the loan was something other than a personal loan between Franke and Greene. The majority of the submitted evidence points to the contrary conclusion. For example, the Promissory Note itself makes no mention of Gannon International or any other Gannon entity, instead listing only Franke and Greene as parties. (Exh. A). Specifically, the Promissory Note designates Greene the "Maker", who promises to pay Franke, as "Payee", the principal sum plus interest. (Id).

Furthermore, numerous private e-mails between Franke and Greene confirm that this loan was personal in nature. In an e-mail dated May 3, 2007, Greene refers to the Promissory Note as a "loan from Bill [Franke] to me to bridge the gap on building my house from now until the final financing this summer." (Exh. B). Greene further acknowledges the personal nature of the loan, by assuring Franke that, "[i]n the event the final loan amount falls short of my target I will sell personal investments to cover any short fall." (Id.).[6] In an e-mail to Franke's accountant, John Shipley ("Shipley"), dated September 29, 2008, Greene indicates that Franke had agreed to loan additional

---

[6] Greene concludes his May 3, 2007, e-mail as follows: "Bill, I really appreciate your help in bridging this financing for me." (Exh. B).

money to Greene to help with "a timing issue on some *personal funds*." (Exh. C (emphasis added)). Finally, in another e-mail to Shipley dated November 25, 2008, Greene affirmatively states that he spoke with Franke about "another short term *personal loan*," to be added to his loan balance. (Exh. D (emphasis added)). There is no mention in any of the e-mails that the debt is owed to Gannon Development rather than to Franke personally, nor is there any indication that the amounts owed by Greene may be offset against debts he is owed by Franke or Gannon corporate entities. Under these circumstances, the Court cannot accept Greene's assertion that the loan was not personal, but rather represented a business dealing between Greene and one or more Gannon entity.

Having determined that the Promissory Note was personal in nature, the Court next must consider whether this personal loan arose out of the same transactions or occurrences underlying Greene's state court claims. Upon review of the record, the Court finds the matters involved in the state court suits are purely business in nature; they involve commercial real estate holding companies and companies that do business in Southeast Asia. (Memorandum in Opposition to Motion to Dismiss, P. 7). According to Franke (and undisputed by Greene), the twenty suits make no reference to Franke and Greene loaning money to one another in their individual capacities, nor do they contain any allegations concerning or relating to Gannon Development. (Id., PP. 7-8).[7] Under these circumstances, the Court finds the facts underlying the instant claim would not constitute a defense to any of Greene's state court claims, and thus the claims do not arise from the same transaction. Greene's Motion to Dismiss Franke's Complaint must therefore be denied.

## CONCLUSION

Accordingly,

---

[7] Greene acknowledges Gannon Development is not a party to any case in St. Louis County involving Franke and Greene. (Reply, P. 6).

**IT IS HEREBY ORDERED** that Defendant Robert P. Greene's Motion to Dismiss Amended Complaint for Lack of Jurisdiction (ECF No. 15) is **DENIED**.

Dated this  12th  day of April, 2012.

                /s/Jean C. Hamilton
                UNITED STATES DISTRICT JUDGE