UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILLIAM E. FRANKE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV1860 JCH |
| | ) | |
| ROBERT P. GREENE, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff William E. Franke's Motion to Dismiss Defendant's Amended Counterclaims for Failure to State a Claim ("Motion to Dismiss"), filed June 29, 2012. (ECF No. 54). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff William E. Franke ("Franke") is a resident of Virginia. (First Amended Complaint ("Compl."), ¶ 2). Defendant Robert P. Greene ("Greene") is a resident of Missouri. (Id., ¶ 3). Franke is the founder, President, Chief Executive Officer, and owner of Gannon International, a Missouri corporation with a family of affiliated corporations, partnerships, and joint ventures around the world. (Id., ¶ 6). Greene was an employee of Gannon International at its principal place of business in St. Louis County. (Id., ¶ 7).

Sometime prior to May, 2007, Greene approached Franke with a request for a loan in the amount of $750,000. (Compl., ¶¶ 8, 9). The stated purpose of the loan was to "bridge the gap on building [Greene's] house from now until the final financing this summer." (Id., ¶ 9, quoting attached Exh. B). Greene told Franke that he would pay back the loan using proceeds from the refinancing of his new personal residence, which was under construction at the time. (Id.). Greene

further assured Franke that, "[i]n the event the final loan amount falls short of my target I will sell personal investments to cover any short fall." (Id.).

On or about May 4, 2007, Greene executed and delivered a promissory note in the original principal amount of $750,000, in favor of Franke (the "Promissory Note"). (Compl., ¶ 8, citing attached Exh. A). Franke alleges as follows with respect to the Promissory Note: (1) that pursuant to the Promissory Note, Franke extended credit in the amount of $750,000 to Greene; (2) that over time, the amount owed under the Promissory Note was partially paid down; (3) that subsequently, additional funds were extended by Franke to Greene under the Promissory Note; and (4) that the Promissory Note thus was a revolving note, which covered all monies borrowed from Franke by Greene, as Greene attempted to satisfy his financial obligations. (Id., ¶ 10).[1] According to Franke, in January, 2009, Franke informed Greene that he would not agree to loan additional funds to Greene under the Promissory Note. (Id., ¶ 15).

Greene resigned from his position with Gannon International on March 2, 2010. (Compl., ¶ 7). On or about May 18, 2011, Greene, along with Walter A. Blocker[2], filed suit in Missouri state court against Gannon International Ltd., The Gannon Pacific Company, The Gannon Company (Hong Kong) Limited, Gannon Vietnam Co., Ltd., and Franke. (ECF No. 16-2). On or about October 4, 2011, Greene filed nineteen other suits against Franke and various individuals and corporate entities in Missouri state court. (ECF No. 15, P. 1).[3] Through the Missouri lawsuits

---

[1] Greene denies the allegations contained in Paragraph 10 of Franke's First Amended Complaint. (See Defendant/Counterclaim Plaintiff's Amended Answer, ¶ 10).

[2] Walter A. Blocker is a former employee of a wholly owned subsidiary of Gannon International, and is not a party to this federal suit. (ECF No. 16-2, P. 3).

[3] The parties also are involved in a lawsuit in Vietnam, where they jointly own a beverage factory. (ECF No. 15, P. 1).

Greene seeks an equitable accounting from numerous Gannon business entities, together with damages for missing funds to which he claims entitlement. (Id., P. 2).

Franke filed his original Complaint in this matter on October 26, 2011. (ECF No. 1). In his First Amended Complaint, Franke seeks payment on the amount allegedly still owed under the Promissory Note.[4]

On January 17, 2012, Greene filed a Motion to Dismiss Amended Complaint for Lack of Jurisdiction. (ECF No. 15). Greene argued the instant First Amended Complaint was a compulsory counterclaim to the nineteen lawsuits filed in Missouri state court, and therefore had to be dismissed pursuant to Rule 12(b)(1). (Id., P. 4). In support of this assertion, Greene alleged Greene and Franke were longtime business associates, engaged in profit-sharing and/or the co-ownership, directly or indirectly, of many business organizations, including Gannon International. (ECF No. 15, PP. 1-2). Greene maintained the loan at issue here was not a personal loan, but rather a loan directly related to the Gannon Development Company, a wholly owned subsidiary of Gannon International. (Id., PP. 3-4). Greene thus asserted Franke's suit on the Promissory Note, related as it is to a Gannon entity, had to be presented as a compulsory counterclaim to the pending Missouri suits, in order to permit a "global reconciliation" of the debts between the parties. (Id., PP. 4-5).

In an Order entered April 12, 2012, this Court denied Greene's Motion to Dismiss. (ECF No. 27). The Court found Greene offered no evidence, other than his own affidavit, to support his contention that the loan at issue was something other than a personal loan between Franke and Greene. (Id., P. 6). The Court continued to hold the personal loan did not arise out of the same

---

[4] According to Franke, as of July 18, 2011, the amount owed under the Promissory Note, including principal and interest, was $531,524.66. (Compl., ¶ 17).

transactions or occurrences underlying Greene's state court claims, which were purely business in nature. (Id., P. 7).

On June 15, 2012, Greene filed his Amended Answer, Affirmative Defenses, and Counterclaims. (ECF No. 49). Greene adds Gannon International as a Defendant to his Amended Counterclaims. Greene claims Franke and members of Gannon International's management promised that Greene would receive profit sharing from Gannon International, in the amount of 10% of the profits earned by Gannon International and its wholly owned subsidiaries (the "Profit Sharing Contract"). (Id., ¶ 7). Greene maintains the profit sharing compensation was deferred for the years 2002 through 2009, and he therefore is owed the principal amount of $267,607, plus interest. (Id., ¶ 10). Greene further claims that after he left Gannon International's employ, he continued to provide consulting services, and thus is owed an additional $15,300 earned pursuant to the parties' Consulting Fee Contract. (Id., ¶¶ 11, 12). Based on these allegations, Greene lodges the following claims against Franke and Gannon International: Count I--Breach of Profit Sharing Contract; Count II--Breach of Consulting Fee Contract; Count III--Quantum Meruit/Unjust Enrichment; Count IV--Promissory Estoppel--Profit Sharing; Count V--Promissory Estoppel--Consulting Fee; Count VI--Tortious Interference with Contract or Business Expectancy (against Franke only); and Count VII[5]--Fraud in the Inducement. (Id., ¶¶ 19-61).

As stated above, Franke filed the instant Motion to Dismiss on June 29, 2012, claiming all counts of Greene's Amended Counterclaims must be dismissed for impermissibly splitting Greene's causes of action, and that Counts III, IV, V, VI and VII further fail to state claims upon which relief may be granted. (ECF No. 54).

## STANDARD FOR MOTION TO DISMISS

---

[5] Count VII is improperly labeled Count IV.

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The Complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 555 (citation omitted); Huang v. Gateway Hotel Holdings, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

### I. Impermissible Claim Splitting

In his Motion to Dismiss, Franke first claims Greene's Amended Counterclaims constitute an impermissible splitting of Greene's alleged causes of action, as by Greene's own admission the issues raised are being litigated by the parties in the St. Louis County suits. (Plaintiff William E. Franke's Memorandum in Support of his Motion to Dismiss Defendant's Amended Counterclaims for Failure to State a Claim ("Franke's Memo in Support"), PP. 3-10). Franke thus maintains that permitting the Amended Counterclaims to proceed in this Court would be inconsistent with

preventing a multiplicity of lawsuits, would cause costly fragmented litigation and not serve the efficient and economic administration of the judicial system, and would subject Franke and Gannon International to possible inconsistent verdicts and double recovery. (Id., PP. 9-10).

The Supreme Court of Missouri has held as follows with respect to the splitting of a cause of action:

> Improper splitting of claims occurs when a party sues on a claim which arises out of the same act, contract or transaction as the previously litigated claims.[6] A court should also consider whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions....The rule against splitting a claim for relief serves to prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly.

Kesterson v. State Farm Fire & Cas. Co., 242 S.W.3d 712, 716 (Mo. banc 2008) (internal quotation marks and citations omitted). In determining whether claims may be split, the Court must look to the factual bases for the claims, not the legal theories. Id. "In order for a subsequent claim on the same transaction to be considered separate, however, there must be new ultimate facts, as opposed to evidentiary details, that form a new claim for relief." Id. (citation omitted).

In his response to Franke's Motion to Dismiss, Greene asserts that his claims in this action involve different "acts, contracts, and transactions" from the claims in the St. Louis County lawsuits. (Defendant/Counterclaim Plaintiff's Opposition to Motion to Dismiss Counterclaims for Failure to State a Claim ("Greene's Opp."), P. 4). Greene maintains the instant profit sharing and consulting fee claims are entirely separate from the St. Louis County lawsuits, which include "19 separate lawsuits arising from [Franke's] theft and mismanagement in connection with companies jointly

---

[6] While the claim-splitting doctrine most frequently is applied when a second suit follows the conclusion of an earlier one, the doctrine also applies to actions pending simultaneously. HFCInvestments, LLC v. Valley View State Bank, 361 S.W.3d 450, 457 n. 6 (Mo. App. 2012).

owned by [Franke] and Greene that are engaged primarily in the business of operating apartment complexes in St. Louis County." (Id.).[7] Greene further maintains his profit sharing and consulting fee counterclaims involve different parties than the St. Louis County lawsuits, and seek different recovery. (Id., PP. 6-7).

Upon consideration, the Court finds itself unable to perform the analysis required by Kesterson, for two reasons. First, the majority of the St. Louis County complaints are not a part of the record before this Court, thus precluding any meaningful comparison. Second, Franke himself makes little or no attempt to compare the claims in the various lawsuits, instead basing his argument primarily on statements made by Greene in previous, unrelated filings. Under these circumstances, the Court cannot begin to "consider whether the parties, subject matter and evidence necessary to sustain the claim[s] are the same in both actions," Kesterson, 242 S.W.3d at 716 (internal quotation marks and citations omitted), and so this portion of Franke's Motion to Dismiss must be denied.

## II. Failure To State A Claim

### A. Count III: Quantum Meruit/Unjust Enrichment

Franke alleges that Count III of Greene's Amended Counterclaims, for quantum meruit/unjust enrichment regarding fees owed for Greene's alleged consulting services, must be dismissed for failure to state a claim. (Franke's Memo in Support, PP. 10-11). Franke explains his position as follows:

> In this count [Greene] alleges that he is owed for certain alleged consulting services. [Greene], however, also pleads in Count II-Breach of Consulting Fee Contract that there is an express contract that pertains to these alleged consulting fees. [Greene] does not plead the quantum meruit count in the alternative but, instead, incorporates by reference the allegations of the

---

[7] Greene maintains the final St. Louis County lawsuit involves Greene's attempt to recover his ownership interest in Gannon Vietnam Co., Ltd., an indirect subsidiary of Gannon International with operations in Southeast Asia. (Greene's Opp., P. 4).

> breach of contract count concerning the alleged consulting fees. Pursuant to Missouri law, a party "...may not maintain an action in quantum meruit where the plaintiff's relationship with the defendant is governed by an existing contract."

(Id. (citations to record omitted) (quoting Burrus v. HBE Corp., 211 S.W.3d 613, 619 (Mo. App. 2006)). Greene responds that he intended to plead his claim of quantum meruit/unjust enrichment in the alternative to his breach of contract claim. (Greene's Opp., PP. 9-10).

Missouri law does not permit a plaintiff to recover under both an express contract and unjust enrichment. See, e.g., Banner Iron Works, Inc. v. Amax Zinc Co., Inc., 621 F.2d 883, 889 (8th Cir. 1980) (finding of a valid contract precludes recovery on a quantum meruit theory under Missouri law); Krupnick & Associates, Inc. v. Hellmich, 378 S.W.2d 562, 569–570 (Mo. 1964) (citations omitted) ("express contract would also preclude the existence of the contract implied by law or quasi contract, necessary to form the basis for recovery in quantum meruit"). Nonetheless, "[t]he fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in [his] complaint." Owen v. General Motors Corp., 2006 WL 2808632 at *2 (W.D. Mo. Sept. 28, 2006).

According to the Federal Rules of Civil Procedure, "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed.R.Civ.P. 8(d)(2). "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Id. "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3).

The liberal policy reflected in Rule 8(d) mandates that courts not construe a pleading "as an admission against another alternative or inconsistent pleading in the same case." Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir.), cert. denied, 473 U.S. 934 (1985); see also Rodriguez-Suris v. Montesinos, 123 F.3d 10, 20 (1st Cir. 1997) ("Especially at the early stages of litigation, a

party's pleading will not be treated as an admission precluding another, inconsistent, pleading."). Thus, although a plaintiff may not recover on both theories, "a plaintiff may claim ... remedies as alternatives, leaving the ultimate election for the court." E .H. Boly & Son, Inc. v. Schneider, 525 F.2d 20, 23 n. 3 (9th Cir. 1975); see also Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co., 596 F.Supp. 344, 347 (D. Nev. 1984) (citations omitted) (holding that a "claimant is entitled to introduce his evidence in support of all his claims for relief; if he doesn't make an election among them, the trier of fact decides which, if any, to sustain.").

Here, while the quantum meruit/unjust enrichment claim in Count III of Greene's Amended Counterclaims is not explicitly pled in the alternative, Greene clearly intended it to operate as an alternative cause of action to his breach of contract claim. While Greene may not recover under both breach of contract and quantum meruit/unjust enrichment, he is permitted to plead both claims. The Court will not require hypertechnicality in pleading these claims in the alternative, and will not dismiss Greene's quantum meruit/unjust enrichment claim based on his failure to use more precise wording.

**B.    Counts IV And V:  Promissory Estoppel**

Franke next alleges that Count IV of Greene's Amended Counterclaims, for promissory estoppel with respect to profit sharing, and Count V, for promissory estoppel with respect to consulting fees, must be dismissed for failure to state a claim. (Franke's Memo in Support, PP. 11-12). In support of this assertion, Franke notes that because promissory estoppel is a form of equitable estoppel, the cause of action requires that there exist no adequate remedy at law. (Id., P. 11). Here, because Counts IV and V seek legal relief in the form of specific monetary damages, Franke maintains they must be dismissed with prejudice.[8]

---

[8] Greene does not address this argument in his responsive brief.

Under Missouri law, "[p]romissory estoppel has these specific elements: (1) promise; (2) on which a party relies to his detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice which only enforcement of the promise could cure." Zipper v. Health Midwest, 978 S.W.2d 398, 411 (Mo. App. 1998) (citations omitted). Promissory estoppel is a form of equitable relief, and generally equity will not intercede if an adequate remedy at law exists. Id. at 412.

Upon consideration, the Court finds Greene has other remedies at law available that would adequately compensate his injury[9], and "therefore, he has failed to establish the final element required for application of promissory estoppel: that injustice can only be avoided by enforcement of the promise." Zipper, 978 S.W.2d at 412. This portion of Franke's Motion to Dismiss will therefore be granted.

### C. Count VI: Tortious Interference With Contract Or Business Expectancy

Count VI of Greene's Complaint, entitled Tortious Interference with Contract or Business Expectancy, is lodged solely against Defendant Franke. (Amended Counterclaims, ¶¶ 48-54). Greene asserts that Gannon International entered into the Profit Sharing and Consulting Fee Contracts with Greene, that Franke was aware of the contracts, and that Franke intentionally interfered with the contracts by inducing and/or causing their breach.

In his Motion to Dismiss, Franke asserts Count VI does not state a claim against him, because "'...a claim for tortious interference with contractual relations contemplates interference from a third party, not from a party to a contract itself.'" (Franke's Memo in Support, P. 12, quoting Fields v. R.S.C.D.B., Inc., 865 S.W.2d 877, 879 (Mo. App. 1993)). Franke continues to assert that

---

[9] For example, the Court finds Greene may recover under Counts I and II, Breach of Profit Sharing and Consulting Fee Contracts, or Count III, Quantum Meruit/Unjust Enrichment.

"'...because an officer or agent of a corporation acting within his or her official capacity is the corporation for purposes of the tort, a corporate officer cannot be held liable for tortiously interfering with the corporation's own contracts.'" (Id., P. 13, quoting Insituform Technologies, Inc. v. Reynolds, Inc., 398 F.Supp.2d 1058, 1064 (footnote 2) (E.D. Mo. 2005)).

Under Missouri law, "a claim of tortious interference with a contract consists of the following elements: (1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from the defendant's conduct." Insituform Technologies, 398 F.Supp.2d at 1064 (citing Community Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n, 796 S.W.2d 369, 372 (Mo. 1990) (en banc) (citation omitted)). Furthermore, "'[a] corporate officer, acting within his or her authority, is privileged to induce a breach of a corporate contract provided that he or she uses no improper means, acts in good faith to protect the corporate interest and does not act out of self interest.'" Id. (quoting Meyer v. Enoch, 807 S.W.2d 156, 159 (Mo.App. 1991) (citation omitted)).

In the instant case, Greene acknowledges Franke induced and/or caused the alleged breaches of contracts as the controlling officer and shareholder of Gannon International. (Amended Counterclaims, ¶ 51). He continues to assert as follows, however: "Franke caused Gannon to breach the aforesaid contracts *not for the benefit of the company, but, rather, out of spite and ill-will towards Greene for resigning from Gannon and his own self-interest and benefit from non-payment*." (Id., ¶ 52 (emphasis added)). In viewing these allegations in the light most favorable to Greene, the Court finds he states a claim for tortious interference with contract, sufficient to withstand Franke's Motion to Dismiss.

### D.     Count VII: Fraud In The Inducement

Under Missouri law, "'[a] party who fraudulently induces another to contract and then also

refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.'" Schreibman v. Zanetti, 909 S.W.2d 692, 703 (Mo. App. 1995) (quoting Kincaid Enterprises, Inc. v. Porter, 812 S.W.2d 892, 900 (Mo. App. 1991)). Franke acknowledges this proposition, but asserts that because Greene's fraud count includes "no separate and distinct acts from the contract allegations," it cannot stand as a separate claim. (Franke's Memo in Support, PP. 14-15, citing Paul v. Farmland Indus., Inc., 37 F.3d 1274, 1276 (8th Cir. 1994)). Upon consideration, however, the Court finds the allegations of Count VII sufficiently distinct from those in Counts I and II. This portion of Franke's Motion to Dismiss will therefore be denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff William E. Franke's Motion to Dismiss Defendant's Amended Counterclaims for Failure to State a Claim (ECF No. 54) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

Dated this 2nd day of August, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE