UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. FRANKE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ROBERT P. GREENE, ) <br> ) <br> Defendant/Counterclaim Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WILLIAM E. FRANKE, ) <br> ) <br> Plaintiff/Counterclaim Defendant, and ) <br> ) <br> GANNON INTERNATIONAL, LTD., ) <br> ) <br> Counterclaim Defendant. ) | Case No. 4:11CV1860 JCH |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff/Counterclaim Defendant William E. Franke and Counterclaim Defendant Gannon International, Ltd.'s (collectively "Movants") Motion for Partial Summary Judgment, filed November 30, 2012. (ECF No. 100). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff/Counterclaim Defendant William E. Franke ("Franke") is a resident of Virginia. (Second Amended Complaint ("Compl."), ¶ 2). Defendant/Counterclaim Plaintiff Robert P. Greene ("Greene") is a resident of Missouri. (Id., ¶ 3). Franke is the founder, President, Chief Executive Officer, and owner of Gannon International, a Missouri corporation with a family of affiliated

corporations, partnerships, and joint ventures around the world. (Id., ¶ 6). Greene was an employee of Gannon International at its principal place of business in St. Louis County. (Id., ¶ 7).

Sometime prior to May, 2007, Greene approached Franke with a request for a loan in the amount of $750,000. (Compl., ¶¶ 8, 9). The stated purpose of the loan was to "bridge the gap on building [Greene's] house from now until the final financing this summer." (Id., ¶ 9, quoting attached Exh. B). Greene told Franke that he would pay back the loan using proceeds from the refinancing of his new personal residence, which was under construction at the time. (Id.). Greene further assured Franke that, "[i]n the event the final loan amount falls short of my target I will sell personal investments to cover any short fall." (Id.).

On or about May 4, 2007, Greene executed and delivered a promissory note in the original principal amount of $750,000, in favor of Franke (the "Promissory Note"). (Compl., ¶ 8, citing attached Exh. A). Franke alleges as follows with respect to the Promissory Note: (1) that pursuant to the Promissory Note, Franke extended credit in the amount of $750,000 to Greene; (2) that over time, the amount owed under the Promissory Note was partially paid down; (3) that subsequently, additional funds were extended by Franke to Greene under the Promissory Note; and (4) that the Promissory Note thus was a revolving note, which covered all monies borrowed from Franke by Greene, as Greene attempted to satisfy his personal financial obligations. (Id., ¶ 10).[1] According to Franke, in January, 2009, Franke informed Greene that he would not agree to loan additional funds to Greene under the Promissory Note. (Id., ¶ 16).

Greene resigned from his position with Gannon International on March 2, 2010. (Compl., ¶ 7). On October 26, 2011, Franke filed his original Complaint in this matter. (ECF No. 1). In his

---

[1] Greene denies the allegations contained in Paragraph 10 of Franke's Second Amended Complaint. (See Greene's Answer to Franke's Second Amended Complaint, ¶ 10).

Second Amended Complaint, filed September 7, 2012, Franke lodges claims entitled Action on Promissory Note[2] (Count I), Breach of Contract (Count II), and Money Had and Received/Unjust Enrichment (Count III). (ECF No. 81).

On September 24, 2012, Greene filed his Answer, Affirmative Defenses, and Counterclaims to Franke's Second Amended Complaint. (ECF No. 85). Greene adds Gannon International, Ltd. as a Defendant to his Amended Counterclaims. Greene claims Franke and members of Gannon International's management promised that Greene would receive profit sharing from Gannon International, in the amount of 10% of the profits earned by Gannon International and its wholly owned subsidiaries, after payment of profit sharing to other employees (the "Profit Sharing Contract"). (Id., ¶ 7). Greene maintains the profit sharing compensation was deferred for the years 2002 through 2009, and he therefore is owed the principal amount of $267,607, plus interest. (Id., ¶ 10). Greene further claims that after he left Gannon International's employ he continued to provide consulting services, and thus is owed an additional $15,300 earned pursuant to the parties' Consulting Fee Contract. (Id., ¶¶ 11, 12). Greene thus maintains that any debt he owes to Franke and/or any Gannon entity must be offset by the deferred profit sharing owed to Greene. (Id., ¶ 13).[3] Based on these allegations, Greene lodges the following claims against Franke and Gannon International: Count I--Breach of Profit Sharing Contract; Count II--Breach of Consulting Fee Contract; Count III--Quantum Meruit/Unjust Enrichment; Count IV--Tortious Interference with Contract or Business Expectancy (against Franke only); and Count V--Fraud in the Inducement. (Id., ¶¶ 19-50).

---

[2] According to Franke, as of July 18, 2011, the amount owed under the Promissory Note, including principal and interest, was $531,524.66. (Compl., ¶ 18).

[3] According to Greene, any remaining amount owed on the Promissory Note is substantially less than the profit sharing owed to Greene. (Counterclaims, ¶ 17).

For purposes of the instant Motion for Partial Summary Judgment only, Movants assume that the debt owed to Franke by Greene may be offset by amounts allegedly owed to Greene by Gannon International as profit sharing. (See Memorandum of Law in Support of Partial Motion for Summary Judgment of Movants ("Movants' Memo in Support"), P. 2).[4] Movants claim, however, that any such profit sharing must be calculated under the method provided for in the Employment Agreement executed by the parties on May 22, 1989, and effective as of January 23, 1989. (Id., PP. 1-2). In applying that method of calculation to the figures set forth in the spreadsheets identified by Greene himself at his deposition, Movants claim no amounts for profit sharing are due Greene for the years 2002 to 2006 and 2008 to 2009, and at most $16,533.20 is owed Greene for 2007. (Id., P. 2). Based on this reasoning, Movants filed the instant Motion for Partial Summary Judgment, requesting judgment in their favor and against Greene as follows: (1) that as to Counts I, IV and V of Greene's Amended Counterclaims, that Greene has no damages for the years 2002 to 2006 and 2008 to 2009, and that as to 2007, Movants owe no more than $16, 533.20, without consideration of any offset or defense; and (2) that as to Counts I and III of Franke's Second Amended Complaint, that Greene is not entitled to offset any amounts for profit sharing for the years 2002 to 2006 and 2008 to 2009, and that for 2007, the most he could offset without consideration of any other offset or defense is $16,533.20. (ECF No. 100).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4] Movants in fact vigorously contest this proposition, maintaining Greene is not entitled to an offset for alleged deferred profit sharing, as the money loaned under the Promissory Note came from Franke personally, not a Gannon entity. (See Reply in Support of Motion for Partial Summary Judgment of Movants ("Movants' Reply"), P. 3).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

**DISCUSSION**

As noted above, on May 22, 1989, the parties executed the Robert P. Greene & The Gannon Management Companies Employment Agreement, to be effective as of January 23, 1989.[5] (See Employment Agreement, attached to Movants' Motion for Partial Summary Judgment as Exh. A, P. 1). The Employment Agreement clearly governed the parties' rights and responsibilities during

---

[5] The Employment Agreement was between Greene and The Gannon Company d/b/a The Gannon Companies. Movants assert The Gannon Company became Gannon International pursuant to a name change. (Movants' Reply, P. 5 n. 2).

Greene's tenure as President and Chief Operating Officer ("COO") of The Gannon Management Company ("GanManCo"), a position he held until 1996. As support for its alleged continued viability beyond that time, Movants note the Employment Agreement contained an initial term of ten years, which then automatically renewed for successive two-year terms unless terminated by either party at any time upon the giving of six month's notice. (Movants' Memo in Support, P. 4; Employment Agreement, P. 21). As it is undisputed notice of termination was provided by neither party, Movants maintain the Employment Agreement, including its compensation provision requiring an offset of profits with losses[6], was still in effect during the 2002 to 2009 time period in which Greene claims entitlement to profit sharing. (Movants' Memo in Support, PP. 4-5). Based on this reasoning Movants claim that, even assuming the numbers in the spreadsheets identified by Greene to be accurate, under the terms of the Employment Agreement Greene's claim for Breach of Profit Sharing Contract (and the two other counts dependent on such claim) fails as a matter of law for the years 2002 to 2006, 2008 and 2009, as he suffered no damages. (Id., PP. 5-8).[7]

---

[6] The Employment Agreement's compensation provision provides in relevant part as follows:
> III.  COMPENSATION:  Greene shall receive, as compensation for performance of the aforestated responsibilities, the following:....
>> B.  The sum, calculated and distributed annually within ninety (90) days after the end of each calendar year, equal to the sum of (i) five percent (5%) of the increase after the date hereof in net revenues of GanManCo or any other management companies or subsidiaries thereof that shall be established in the future by Franke for the purpose of managing apartment complexes (the "Companies"), plus (ii) five percent (5%) of consolidated net revenues of Gannon and all other subsidiaries of Gannon for such calendar year.  If Gannon or any Subsidiary has negative net revenues, the total positive net revenues from the other included companies shall be decreased accordingly....

(Employment Agreement, PP. 5-6).

[7] As noted above, Movants concede for purposes of this motion that for 2007, Greene may be entitled to some limited relief.  (Movants' Memo in Support, P. 2).

By way of response, Greene counters that the terms of the Employment Agreement, including its compensation provisions, applied only to his employment as the President and COO of GanManCo. (Greene's Memorandum of Law in Opposition to Movants' Motion for Partial Summary Judgment ("Greene's Opp."), PP. 2, 5). The parties' obligations thereunder thus ceased when Greene vacated that position in 1996, to become Executive Vice President and COO of a different company, Gannon International, Ltd., the position he held until his resignation in March, 2010. (Id.). As support for this interpretation, Greene first notes Franke admits a new President and COO of GanManCo was hired to replace him, when Greene accepted the position with Gannon International. (Id., P. 5). Greene further asserts the parties' course of conduct was consistent with his interpretation of the Employment Agreement, for the following reasons: (1) for the years 1997 to 2001, while Greene was serving in his position with Gannon International, he was paid profit sharing calculated under a formula that did not subtract losses from profits; (2) Greene's profit sharing for the years 2002 to 2009, though deferred, was in fact calculated annually (and approved by Movants' accountant) pursuant to a formula that did not subtract losses from profits; (3) during discussions and negotiations between Greene and Movants relating to Greene's compensation in his position with Gannon International, neither the parties nor the third party firm enlisted to prepare an analysis of Greene's compensation ever referenced, discussed or considered the Employment Agreement; and (4) Greene was not paid compensation as specified in the Employment Agreement after 1996, thus demonstrating the agreement was not followed once he left his position with GanManCo. (Id., PP. 3-4, 6-10).[8]

---

[8] Movants attempt to negate the import of the majority of Greene's assertions by citing to the following waiver provision in the Employment Agreement:  "[A]ny failure by a party hereto to exercise or otherwise act with respect to any of its rights hereunder in the event of the breach of any of the terms or conditions hereof by the other party shall not be construed as a waiver of such breach nor prevent said party from thereafter enforcing strict compliance with any and all of the

Upon consideration, the Court finds fact questions remain with respect to whether the terms of the Employment Agreement remained in effect during the relevant time period, thereby barring the majority of Greene's requested relief. In other words, while it apparently is undisputed neither side gave the required six month notice of termination, the Employment Agreement nevertheless may have ended under its own terms. For example, as noted by Greene the Employment Agreement arguably charged Greene with duties, and thus provided for compensation, only in his capacity as President and COO of GanManCo. (See, e.g., Employment Agreement, P. 4 "DUTIES" ("Greene shall serve as the President and Chief Operating Officer of GanManCo *in which capacity* Greene shall be charged....with the responsibilities of....") (emphasis added)).[9] Furthermore, the Employment Agreement clearly provided for the cessation of compensation in the event Greene failed to perform his duties. (See Employment Agreement, P. 8). Thus, as it appears undisputed Greene ceased performing at least some of his stated duties when he left his position with GanManCo, a fact question arises as to whether the Employment Agreement terminated in 1996, as alleged by Greene. Under these circumstances, Movants' Motion for Partial Summary Judgment must be denied.

## CONCLUSION

Accordingly,

---

terms and conditions hereof." (See Movants' Reply, PP. 6-9, citing Employment Agreement, P. 19).

[9] Movants maintain the Employment Agreement did not limit Greene's services to work he performed for GanManCo, instead requiring him to perform "such other duties as Gannon [International] may request from time to time in connection with or in furtherance of the business of Gannon [International], the Subsidiaries and any Applicable Ownership Entity." (See Movants' Reply, P. 5, quoting Employment Agreement, P. 5). The Court finds these potentially conflicting provisions establish an ambiguity in the Employment Agreement, the resolution of which is best left to the trier of fact.

**IT IS HEREBY ORDERED** that Plaintiff/Counterclaim Defendant Franke and Counterclaim Defendant Gannon International, Ltd.'s Motion for Partial Summary Judgment (ECF No. 100) is **DENIED**.

Dated this  1st  day of February, 2013.

                                               /s/Jean C. Hamilton
                                               UNITED STATES DISTRICT JUDGE